## THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

MATTHEW QUIGLEY,

      Plaintiff,

v.

DEE DEE BROOKHART, CLAYTON
STEPHENSON, and MARGARET
MADOLE,

      Defendants.

Case No. 3:25-cv-00340-GCS

## MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

Plaintiff Matthew Quigley, an inmate of the Illinois Department of Corrections who is currently incarcerated at Big Muddy River Correctional Center, brings this action pursuant to 42 U.S.C. § 1983 for deprivations of his constitutional rights. Quigley alleges that he was subjected to unconstitutional conditions of confinement in violation of the Eighth Amendment while at Lawrence Correctional Center.

This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A.[1] Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which

---

[1]    The Court has jurisdiction to screen the Complaint due to Plaintiff's consent to the full jurisdiction of a Magistrate Judge (Doc. 6), and the limited consent to the exercise of Magistrate Judge jurisdiction by the Illinois Department of Corrections and Wexford Health Sources, Inc., as set forth in the Memoranda of Understanding between the Court and these two entities.

relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. *See* 28 U.S.C. § 1915A(b).

## THE COMPLAINT

On November 20, 2022, Quigley transferred from Pontiac Correctional Center to Lawrence as part of a transfer of 40 inmates from approved protective custody (Doc. 1, p. 12). Although Quigley alleges the transfer was supposed to be from protective custody at one prison to protective custody in another, upon his arrival at Lawrence he was placed in isolated confinement. *Id*. He was told that Warden Brookhart ordered him to sign back into protective custody, even though he had already been approved for protective custody. *Id*. Brookhart then denied the request of almost all the inmates to be placed back in protective custody. Quigley's request to be placed in protective custody was also denied. Brookhart subjected Quigley and the other inmates in isolated confinement to unconstitutional conditions to force Quigley to sign out of protective custody. *Id*. While in isolated confinement, Quigley was denied all out-of-cell exercise and movement. *Id*. He was denied access to the yard and dayroom. *Id*. He was also given an inadequate, flat mattress that was substantially different than the mattresses found in general population. *Id*.

Although Quigley and the other inmates requested access to the yard and dayroom daily, the officers repeatedly told them that the decision to limit their access came from the warden. (Doc. 1, p. 13). He alleges that staff instead encouraged them to sign out of protective custody so that they could be transferred to other prisons. *Id*. at p. 14. Quigley believes that IDOC was trying to reduce the number of inmates in protective

custody through this process. But Quigley refused to sign out of protective custody due to his fear of retaliation from certain gangs. *Id.* He submitted a request for protective custody, but the administration pretended that they had not received his request. *Id.*

Quigley experienced other restrictions, including being denied adequate access to the law library. His food was also prepared by general population inmate workers, which Quigley maintains is unsafe for protective custody inmates (Doc. 1, p. 14).

As a result of the restrictions, Quigley was unable to exercise and suffered from pain in his lower back, shoulders, hip, and elbows. (Doc. 1, p. 12). His mental and physical health deteriorated, and he became depressed and lethargic. *Id.*

Quigley filed several grievances about his condition, but the grievances were denied by Counselor Livingston, who noted that it was the warden's policy to hold the inmates in isolated confinement. (Doc. 1, at p. 12-13). John/Jane Doe grievance officer refused to respond to one grievance, and the Administrative Review Board ("ARB") member Clayton Stephenson would not address the grievance because Quigley lacked a response from the grievance officer. *Id.* at p. 13.

While in isolated confinement, Quigley alleges that personal property inmate workers were given access to Quigley's and other inmates' property. (Doc. 1, p. 13). Quigley alleges that these inmate workers were from general population, and "it is widely known" that it is not safe for general population to come into contact with inmates in protective custody, their property, or their food. *Id.* During this time, some of his personal property went missing, and his electric razor was vandalized. *Id.* Quigley alleges that Lawrence "administration" knew they had a theft problem but failed to address the

issue. *Id*. Quigley filed a grievance about his property, but the response was delayed until he transferred, and then denied as moot. *Id*.

After Quigley attempted to sign back into protective custody, he and some of the other inmates were transferred to another prison. (Doc. 1, p. 14). On February 11, 2023, Quigley was transferred to Pinckneyville Correctional Center. On February 22, 2023, he again attempted to sign back into protective custody. On March 9, 2023, his request was approved, and he was placed in segregation.

But shortly thereafter, on March 25, 2023, Quigley was transferred back to Lawrence and placed back in isolated confinement. (Doc. 1, p. 14). He was again subjected to the same conditions as he previously experienced at Lawrence. Quigley alleges that Brookhart ordered staff to hinder his efforts to sign into protective custody to encourage him to sign out of protective custody. *Id*. Quigley alleges that numerous inmates made the ARB aware of their circumstances, but the ARB failed to intervene. *Id*. While at Lawrence, some of Quigley's personal property again went missing. *Id*. He again requested access to the yard, but was told by officers that he could access the yard if he signed out of protective custody. *Id*. at p. 15. Quigley refused to sign out of protective custody and, as a result, he was denied all out-of-cell activity. *Id*. He notes that even inmates in segregation received an hour out of their cell multiple times per week. *Id*. He previously held a job and was taking classes prior to arriving at Lawrence, but all of those were denied after his transfer. *Id*. at p. 16. Quigley alleges that these conditions were intentional and on the orders of Brookhart to reduce the number of inmates in protective

custody. *Id*. Numerous officers told Quigley that they did not want protective custody at Lawrence. *Id*. at p. 17.

Quigley filed grievances but the grievances sometimes went missing or were delayed. (Doc. 1, p. 15). Quigley alleges the grievances were not addressed in a timely manner. For instance, one of his grievances regarding missing property took over a year to get a response. Grievance officers Madole and Nothnagle failed to stamp the copies of the grievances that were returned to Quigley. He alleges that makes it difficult to exhaust his grievance. *Id*. Nothnagle also determined that Quigley's issues were appropriately addressed by the prison. *Id*. at p. 18. K. Ulrich denied his grievance six months after Quigley submitted his grievance for review, a violation of administrative directives and department rules. *Id*. at p. 16-17. Margaret Madole also denied his grievances.

On September 27, 2023, Quigley transferred to Big Muddy River Correctional Center. (Doc. 1, p. 17). During the transfer, some of his property again went missing. Quigley believes that inmate workers stole his property. *Id*. Both his television and fan went missing. Although officials at Big Muddy replaced both items, the fan he received was "drastically inferior" to his original fan. *Id*.

### PRELIMINARY DISMISSALS

Quigley identifies several officials affiliated with the prison grievance process who either denied or, in some way, delayed his grievances. He identifies ARB chairpersons Clayton Stephenson, Margaret Madole, and Ryan Nothnagle, as well as grievance officers K. Ulrich and John/Jane Doe. He also notes that counselor Livingston denied one of his grievances. These officials are not identified in the case caption, although some are listed

as defendants at various points in his Complaint. *See, e.g.*, *Myles v. United States*, 416 F.3d 551, 551-52 (7th Cir. 2005) (noting that to be properly considered a party a defendant must be "specif[ied] in the caption"). Further, he merely alleges that they denied grievances, delayed his grievances, or failed to properly handle his grievances. But the simple denial or mishandling of a grievance does not state a claim. *See Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011); *Grieveson v. Anderson*, 538 F.3d 763, 772 n.3 (7th Cir. 2008). Quigley also alleges that the delays and denials hindered his ability to exhaust his administrative remedies and thus violated his due process rights. (Doc. 1, p. 19). But Quigley does not have a due process interest in the grievance process as he alleges. *See, e.g.*, *Courtney v. Devore*, No. 13-1984, 595 Fed. Appx. 618, 620–621 (7th Cir. Dec. 12, 2014) (noting that "state grievance procedures do not create substantive liberty interests protected by due process."); *Owens*, 635 F.3d at 953–954 (stating that "[p]rison grievance procedures are not mandated by the First Amendment and do not by their very existence create interests protected by the Due Process Clause. . . ."); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996) (noting that "a state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause."). Thus, any potential claims against the grievance officials are **DISMISSED without prejudice**.

DISCUSSION

Based on the allegations in the Complaint, the Court designates the following counts:

> **Count 1:**   **Eighth Amendment conditions of confinement claim against Dee Dee Brookhart for housing Quigley in isolated**

|             | confinement and denying him access to out-of-cell activities. |
|-------------|---------------------------------------------------------------|
| **Count 2:** | **First Amendment retaliation claim against Dee Dee Brookhart for denying Quigley exercise, allowing theft of his property, and tampering with his grievances in retaliation for Quigley requesting protective custody and filing grievances.** |

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard**.[2]

At this stage, Quigley states a viable claim in Count 1 against Dee Dee Brookhart for conditions of confinement. He alleges that the denial of out-of-cell activity was on the orders of Brookhart. She specifically ordered staff to deny inmates in isolated confinement any out-of-cell time, including exercise, the dayroom, and the law library. *See Vinning-El v. Long*, 482 F.3d 923, 924 (7th Cir. 2007). Quigley alleges he made multiple complaints about his conditions and was told the denial of out-of-cell activity was at the directive of Brookhart.

But to the extent that he alleges Brookhart failed to remedy the issue regarding the theft of Quigley's property or failed to properly replace his fan or television, Quigley fails

---

[2]     This includes any claim against Brookhart in her official capacity. *See, e.g.*, *Brown v. Budz*, 398 F.3d 904, 918 (7th Cir. 2005) (noting that Eleventh Amendment bars official capacity claims for monetary damages). *See also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (noting that an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

to state a claim. There are simply no allegations suggesting that Brookhart was aware of thefts from the inmates in isolated confinement. Quigley fails to allege that Brookhart was aware of the specific losses that Quigley experienced nor is there any indication that she was aware of the loss of his fan and television. Thus, any claim regarding Quigley's lost property is **DISMISSED without prejudice**.

Quigley also fails to state a retaliation claim against Brookhart. To state a retaliation claim, a plaintiff must allege that he engaged in protected activity, "suffered a deprivation likely to deter such activity," and the "First Amendment activity was at least a motivating factor in the decision to impose the deprivation." *Hawkins v. Mitchell,* 756 F.3d 983, 996 (7th Cir. 2014). Quigley fails to allege that his grievances or his request for protective custody was a motivating factor in Brookhart's decisions regarding the conditions in isolated confinement. In fact, Quigley alleges that Brookhart instituted the conditions for Quigley and the other transferred inmates before they signed into protective custody. Thus, Quigley fails to state a claim in Count 2.

DISPOSITION

For the reasons stated above, Count 1 shall proceed against Dee Dee Brookhart. All other claims and defendants are **DISMISSED without prejudice**.

The Clerk of Court shall prepare for Dee Dee Brookhart: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons) and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to the defendant's place of employment as identified by Quigley. If the defendant fails to sign and return the Waiver of Service of Summons (Form

6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the defendant, and the Court will require the defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If the defendant can no longer be found at the work address provided by Quigley, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g). **Pursuant to Administrative Order No. 244, Defendant need only respond to the issues stated in this Merit Review Order**.

If judgment is rendered against Quigley, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Quigley is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply

with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. PROC. 41(b).

**IT IS SO ORDERED.**

**DATED: May 9, 2025.**

Digitally signed by
Judge Sison
Date: 2025.05.09
12:08:43 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**

NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendant of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, the defendant will enter their appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendant's Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendant before filing any motions, to give the defendant notice and an opportunity to respond to those motions. Motions filed before defendant's counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**